1
2
3
4               UNITED STATES DISTRICT COURT
5             NORTHERN DISTRICT OF CALIFORNIA
6

7    PIETRO PASQUALE-ANTONI SGROMO,      Case No. 19-cv-08170-HSG
8                 Plaintiff,              **ORDER GRANTING MOTION TO
                                          CONFIRM ARBITRATION AWARD**
9            v.
                                          Re: Dkt. Nos. 29, 30
10   LEONARD GREGORY SCOTT, et al.,
11                Defendants.

12

13         Pending before the Court is the petition to confirm arbitration award, filed by Leonard

14   Gregory Scott, and the cross-petition to vacate the arbitration award, filed by Pietro Pasquale

15   Antonio Sgromo.  *See* Dkt. Nos. 29, 30.  The Court finds this matter appropriate for disposition

16   without oral argument and the matter is deemed submitted.  *See* Civil L.R. 7-1(b).  For the reasons

17   discussed below, the Court **GRANTS** the motion to confirm the arbitration award and **DENIES**

18   the motion to vacate the award.

19   **I.    BACKGROUND**

20         The parties in this case have a long and turbulent history, which has culminated in several

21   different lawsuits in fora across the United States and Canada.  Because the parties reference some

22   of these other actions, the Court provides a brief summary.

23         In early 2013, Mr. Scott and Mr. Sgromo began a personal and professional relationship.

24   At the time, Mr. Sgromo owned two sets of intellectual property rights:  one for a "3-D vision

25   system for swimming pools" (U.S. Patent No. 7,046,440, or "the '440 Patent"), and one for an

26   "inflatable landing" that attached to a water slide (the "Intellectual Property").  Disputes later

27   arose regarding whether Mr. Sgromo had transferred these rights and who owned the rights to the

28   Intellectual Property.  Specifically, Mr. Scott argued that in June 2013 Mr. Sgromo had assigned

United States District Court
Northern District of California

1    the Intellectual Property rights to Eureka Inventions, LLC, an entity of which Mr. Scott is the sole

2    member, and to Mr. Scott.  Mr. Sgromo, acting as a consultant for Eureka, then licensed the

3    Intellectual Property to third parties Bestway (USA), Inc. and Bestway (Hong Kong) International,

4    Ltd. (collectively, "Bestway") on Eureka's behalf.

5         On February 23, 2015, Eureka filed an action against Bestway in the Northern District of

6    California, seeking declaratory relief arising out of disputes relating to the two license agreements

7    for the Intellectual Property (the "License Agreements").  That action was assigned to Judge

8    Jeffrey S. White in this district.  *See Eureka Inventions, LLC v. Bestway (USA), Inc.*, 15-cv-00701-

9    JSW.  On October 28, 2015, the parties stipulated to dismiss the case pursuant to a settlement

10   agreement.  *See id.* at Dkt. No. 35.  Under the settlement agreement, the parties agreed, *inter alia*,

11   that (1) Bestway holds the exclusive right to make, import, and sell products under the '440

12   Patent; (2) Bestway timely paid all royalties due under the License Agreements; and (3) these

13   royalty payments, and all future royalties would be held in an escrow account.  *See* Dkt. No. 30-3,

14   Ex. 10 at §§ 2, 4.  The parties further acknowledged that Mr. Sgromo, as a consultant for Eureka,

15   had initiated an arbitration action against Mr. Scott concerning the ownership of the Intellectual

16   Property and who was the rightful beneficiary of the royalties for the Intellectual Property under

17   the License Agreements.  *See id.* at § 3.  Bestway agreed to hold the royalties in the escrow

18   account until a ruling was issued as to the rightful beneficiary.  *See id.*  And if Mr. Sgromo was

19   ultimately found to be the owner of the Intellectual Property, then the License Agreements would

20   be terminated.  *See id.* at § 6.  Mr. Scott signed the settlement agreement on behalf of Eureka, and

21   Patrizio Fumagalli, the President and CEO of Bestway, signed the agreement on behalf of

22   Bestway.  *See id.* at § 17.

23        When Mr. Scott and Mr. Sgromo could not agree on who owned the Intellectual Property,

24   Bestway filed an interpleader action in this district on January 13, 2017, to determine who owned

25   the royalty payments that Bestway held in escrow from the License Agreements.  *See Bestway*

26   *(USA), Inc. v. Sgromo*, 17-cv-00205-HSG.  The interpleader action was assigned to this Court.  *Id.*

27   At the time, the parties did not move to relate the interpleader action *to Eureka Inventions, LLC v.*

28   *Bestway (USA), Inc.*, 15-cv-00701-JSW.  And years later, when Mr. Sgromo moved to relate the

1    two cases, Judge White determined that they were not related.  *See Eureka Inventions, LLC v.*
2    *Bestway (USA), Inc.*, 15-cv-00701-JSW, Dkt. Nos. 66, 71 at 3, n.1.

3         On July 2, 2018, the Court in the interpleader action granted summary judgment in favor of
4    Mr. Scott and Eureka, holding that Eureka and Mr. Scott met their burden to show that, at the time
5    the License Agreements were executed, they owned the rights to the Intellectual Property.  *See*
6    *Bestway (USA), Inc. v. Sgromo*, 17-cv-00205-HSG, Dkt. No. 90.  On April 18, 2019, the Court
7    entered judgment in the interpleader action.  *See id.* at Dkt. No. 148.  As part of that judgment, the
8    Court ordered that the defendants, including Mr. Sgromo, "are permanently and perpetually
9    restrained and enjoined from filing or prosecuting any claim in any federal or state court
10   pertaining to the Royalty Payment."  *See id.*  The Ninth Circuit affirmed the judgment on
11   December 18, 2019.  *See id.* at Dkt. No. 165.

12        While the interpleader action was still pending, Mr. Sgromo filed an arbitration action with
13   JAMS against Mr. Scott on April 23, 2018, pursuant to an agreement that the parties had entered
14   while living together (the "the Living Together Agreement" or "LTA").  *See* Dkt. No. 29-2, Ex. A.
15   As part of the arbitration, Mr. Sgromo claimed that Mr. Scott had wrongfully "asserted his claims
16   over the [Intellectual Property]" through various means, including attempting to involuntarily
17   confine Mr. Sgromo under California Welfare and Institutions Code § 5150 and accusing Mr.
18   Sgromo of domestic violence.  *See id.*  He also alleges that Mr. Scott interfered with his ongoing
19   negotiations with Polygroup related to the Intellectual Property.  *Id.*  Mr. Sgromo asserted claims
20   for (1) breach of confidence; (2) negligent misrepresentation; (3) appropriation of trade secrets;
21   (4) misappropriation of funds; (5) patent infringement; (6) breach of the implied duty of good faith
22   and fair dealing; (7) breach of contract; (8) fraud; (9) unjust enrichment; and (10) conspiracy.  *See*
23   *id.*  On the basis of these claims, Mr. Sgromo sought various relief, including a declaration that the
24   License Agreements between Eureka and Bestway are unenforceable and terminated; an order that
25   the Intellectual Property and all royalties held in escrow be returned to Mr. Sgromo; and an order
26   reimbursing Mr. Sgromo for all business expenses incurred on behalf of Eureka.  *See id.*

27        On February 25, 2019, Justice Low entered his final award.  *See* Dkt. No. 1-3, Ex. D.  As a
28   threshold matter, Justice Low determined that Bestway and Eureka were not parties to the

United States District Court
Northern District of California

3

arbitration and not signatories to the LTA.  *See id.* at 5.  The arbitration therefore only concerned the LTA and "all property, business interest and investments as between Sgromo and Scott."  *Id.* Justice Low further found that:  (1) Mr. Sgromo did not have any rights to the intellectual property that is the subject of the License Agreements; (2) to the extent Mr. Sgromo seeks quantum meruit for consulting work performed for Bestway, Mr. Scott is not responsible; and (3) Mr. Sgromo failed to establish that the transfer of Intellectual Property to Eureka was fraudulent.  *Id.*  More specifically, Justice Low found that Mr. Scott did not misrepresent any of the terms of the transfers or of the rights to royalties and consulting fees.  *See id.*

Justice Low further concluded that Mr. Sgromo provided insufficient proof of malicious prosecution by Mr. Scott.  *Id.* at 5–6.  Mr. Sgromo had failed to provide sufficient proof of malicious motive, and the evidence before the arbitrator indicated that the police had probable cause to arrest Mr. Sgromo and charge him with assault for attacking Mr. Scott with a wrench and electric drill and for punching him in the face.  *See id.*  Similarly, Justice Low found that there was insufficient evidence that Mr. Scott had sought involuntary detention under § 5150 based on malicious motive rather than on Mr. Sgromo's erratic behavior and methamphetamine use.  *Id.* at 6–7.

In response to Mr. Sgromo's allegations that Mr. Scott interfered with Mr. Sgromo's contract or prospective economic advantage with Polygroup, Justice Low found that there was no enforceable contract between the parties and Mr. Scott did not engage in wrongful conduct designed to interfere or disrupt the relationship with Polygroup.  *See id.* at 7–8. Rather, Mr. Scott contacted Polygroup on behalf of Eureka, which had the rights to the relevant Intellectual Property, and would be a party to any eventual agreement with Polygroup.  *Id.*  Mr. Scott also expressed "an honest opinion" "regarding Mr. Sgromo's physical and mental condition" at the time, and offered to move the stalled negotiations forward.  *See id.*  Justice Low therefore found that Mr. Sgromo had failed to prove any liability and denied all of Mr. Sgromo's requests for declaratory relief, orders, and injunctions.  *Se id.* at 8–9.

On May 7, 2019, Mr. Scott and Eureka filed a petition to confirm the arbitration award in San Francisco Superior Court, citing California Code of Civil Procedure §§ 1285, *et seq.*, as well

4

as the Federal Arbitration Act.  *See Scott v. Sgromo*, Case No. CPF-19-516663 (S.F. Superior

Court).  On June 13, 2019, Mr. Sgromo removed the action to the Eastern District of Texas on the

basis of diversity and federal question jurisdiction, seeking to vacate the arbitration award.  *See*

Dkt. No. 1.  The district court subsequently ordered the case transferred to the Northern District of

California on November 7, 2019.  *See* Dkt. No. 14.  The Court found that this case was related to

an earlier filed action, Case No. 17-cv-0205, and the instant case was reassigned to this Court.  *See*

Dkt. Nos. 25–26.

Since that time, Mr. Sgromo has made repeated efforts to have this case reassigned to

Judge White.  Mr. Sgromo first filed a request to amend the transfer order to assign the case to

Judge White specifically.  *See* Dkt. No. 15.  He also attempted to appeal the reassignment of this

case to the Ninth Circuit.  *See* Dkt. No. 27.  The Ninth Circuit dismissed the appeal, however, for

lack of jurisdiction.  *See* Dkt. No. 36.  Mr. Sgromo then filed a motion to transfer this action to

Judge White as a "proper court of jurisdiction."  *See* Dkt. No. 52 (citing Case No. 15-cv-0701).

Mr. Sgromo also appealed to the Ninth Circuit, *see* Dkt. No. 54, which again dismissed the appeal

for lack of jurisdiction, *see* Dkt. No. 58.  Mr. Sgromo raises similar arguments in his self-styled

"sur-reply" brief.  *See* Dkt. No. 33 at 5–7.  The Court understands that Mr. Sgromo would prefer

Judge White to preside over this case.  Nevertheless, Mr. Sgromo does not have the authority to

choose which judge hears this case, and the Court has lost all patience with the repeated and

improper steps Mr. Sgromo has taken to forum shop.  The Court accordingly **DENIES** Dkt. Nos.

15, 52.

## II.    JURISDICTION

The Court first addresses whether it has jurisdiction to either confirm or vacate the

arbitration award in this action.  In removing the action from San Francisco Superior Court to the

Eastern District of Texas, Mr. Sgromo cited diversity and federal question jurisdiction as the

grounds for removal.  *See* Dkt. No. 1 at 5–10.  Mr. Sgromo alleged that there is complete diversity

because he is a citizen of Canada, and Mr. Scott resides in California, and that the amount in

controversy exceeds $75,000.  *Id.* at 9.  He further alleged that the enforcement of the arbitration

award implicated the Federal Arbitration Act ("FAA").  *Id.* at 5–6.

United States District Court
Northern District of California

*First*, the FAA permits a party to move for an order confirming an arbitration award. *See* 9 U.S.C. §§ 9, 10. "However, the FAA does not itself confer jurisdiction on federal district courts over actions to compel arbitration or to confirm or vacate arbitration awards." *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 918 (9th Cir. 2009) (citing 9 U.S.C. § 4). "[N]or does it create a federal cause of action giving rise to federal question jurisdiction under 28 U.S.C. § 1331. *Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)). Therefore, "[t]here must be diversity of citizenship or some other independent basis for federal jurisdiction." *Id.* (quotation omitted).

*Second*, for purposes of diversity jurisdiction under § 1332(a), the critical question is how to calculate the amount in controversy. Generally, when a petitioner seeks confirmation of an arbitration award without seeking remand for further arbitration proceedings, the amount in controversy is the value of the award itself. *See, e.g.*, *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 664 (9th Cir. 2005); *see also Pac. Metro, LLC v. Le Investments, Inc.*, No. C13-02216 HRL, 2013 WL 12304551, at *2 (N.D. Cal. Aug. 27, 2013) (collecting cases). Here, however, Mr. Scott seeks to confirm, and Mr. Sgromo seeks to vacate, a $0 arbitration award. Nevertheless, in *Theis Research*, the Ninth Circuit held that the amount-in-controversy requirement should be measured by "the amount in dispute in the underlying litigation between the parties" where a party seeks to remand the arbitrated claims, or seeks the equivalent of such a remand. *Theis Research*, 400 F.3d at 664. In *Theis*, in addition to seeking to vacate the $0 arbitration award, the plaintiff also filed a complaint seeking damages for substantially the same claims asserted in the underlying arbitration. *Id.* The Court held that the amount in controversy was met because the plaintiff was seeking to obtain $200 million in damages: "Although [neither party has] asked that the arbitration proceedings be reopened, Theis sought to obtain by its district court complaint substantially what it had sought to obtain in the arbitration. Theis simply chose to 'reopen' its claims in the district court rather than in arbitration." *Id.* at 665.

Mr. Sgromo does not formally request to reopen the arbitration proceedings. However, his notice of removal contains an explanation why he is entitled to the damages and rights to the Intellectual Property he asserted in the arbitration. *See* Dkt. No. 1 at 10–27. His petition to vacate

United States District Court
Northern District of California

the arbitration award is captioned "cross-petition to vacate arbitration award- remand 'related claims' to J. White Court," and requests that the Court "remand any outstanding claims to the Judge White Court" for further proceedings. *See* Dkt. No. 30 at 1, 8. As in *Theis Research*, it appears that Mr. Sgromo seeks to "reopen" his claims in district court. *See Theis Research*, 400 F.3d at 665. Mr. Sgromo is also proceeding pro se, and the Court is mindful that "[a] document filed pro se is to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation omitted). The Court therefore concludes that the amount Mr. Sgromo sought in the arbitration proceeding, and not the $0 arbitration award, determines the amount in controversy. And the damages Mr. Sgromo sought in the arbitration proceeding easily meet the $75,000 threshold. Mr. Sgromo indicated that he sought more than $250,000 in damages, including the value of the royalty payments from Bestway and the value of the underlying Intellectual Property, as well as the approximately $82,000 incurred during the criminal assault proceedings. *See* Dkt. No. 29-2, Ex. A. The Court, therefore, concludes that it has jurisdiction to consider whether the arbitration award should be confirmed or vacated and remanded.

## III.   LEGAL STANDARD

Section 9 of the FAA provides that when presented with an application to confirm an arbitration award, the district court "must grant an order unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. "'Neither erroneous legal conclusions nor unsubstantiated factual findings justify a federal court review of an arbitral award.'" *Bosack v. Soward*, 586 F.3d 1096, 1102 (9th Cir. 2009) (quoting *Kyocera v. Prudential-Bache T Servs.*, 341 F.3d 987, 994 (9th Cir. 2003) (en banc)). Rather, grounds for vacating an award are limited to those specified by statute. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008) (holding Section 10 provides the FAA's exclusive grounds for vacatur of an arbitration award). Thus, the role of the courts in reviewing arbitration awards is extremely circumscribed. *See Southern California Gas Co. v. Utl. Workers Union of Am., Local 132, AFL-CIO*, 265 F.3d 787, 792 (9th Cir. 2001) (citing *Stead Motors v. Auto. Machinists Lodge*, 886 F.2d 1200, 1208 n.8 (9th Cir. 1989) (en banc)). The confirmation of an arbitration award is meant to be a summary proceeding. *G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1105 (9th Cir. 2003).

1     The FAA authorizes courts to vacate an award when (1) the award was procured by

2     corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrator;

3     (3) the arbitrator was guilty of misconduct in refusing to postpone the hearing, upon sufficient

4     cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any

5     other misbehavior by which the rights of any party have been prejudiced; or (4) the arbitrator

6     exceeded his powers, or so imperfectly executed them that a mutual, final, and definite award

7     upon the subject matter was not made.  *See* 9 U.S.C. § 10(a).

## IV.     DISCUSSION

9     Because of the parties' history, the Court finds it important to explain what this case is and

10    is not about.  This is emphatically not an opportunity for the parties to relitigate the interpleader

11    action.  Neither is it an opportunity for Mr. Sgromo to argue that he owns the Intellectual Property

12    underlying many of these actions.  Rather, the sole issue before the Court is whether to confirm or

13    vacate the February 25, 2019, arbitration award.

### A.     Choice of Law

15    As a threshold matter, Mr. Sgromo suggests that California law, including the California

16    Arbitration Act ("CAA"), as well as the JAMS Streamlined Arbitration Rules, govern this action.

17    *Compare* Dkt. No. 29 at 5–6, *with* Dkt. No. 33 at 2–5.  "[T]he strong default presumption is that

18    the FAA, not state law, supplies the rules for arbitration."  *Sovak v. Chugai Pharmaceutical Co.*,

19    280 F.3d 1266, 1269 (9th Cir.), *opinion amended on denial of reh'g*, 289 F.3d 615 (9th Cir. 2002).

20    This presumption is in keeping with Congress' purpose in enacting the FAA to "overcome courts'

21    refusals to enforce agreements to arbitrate" and to place arbitration agreements "upon the same

22    footing as other contracts."  *See Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270–71

23    (1995) (quotations omitted).  Accordingly, the FAA "creates a body of federal substantive law of

24    arbitrability, enforceable in both state or federal courts and pre-empting any state laws or policies

25    to the contrary."  *See Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936 (9th Cir. 2001)

26    (quotation omitted).  Nevertheless, the FAA still permits parties to agree to arbitrate under state

27    rules that differ from those set forth in the FAA.  *See Volt Info. Scis., Inc. v. Bd. of Trustees of*

28    *Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).  In order for state law to govern, the

United States District Court
Northern District of California

8

"parties must clearly evidence their intent to be bound by such rules." *Sovak*, 280 F.3d at 1269.

Here, Mr. Sgromo contends that the parties agreed under the LTA to binding arbitration under the JAMS Streamlined Arbitration Rules. *See* Dkt. No. 33 at 3–4; *see also* Dkt. No. 1-3, Ex. B at ¶ 10. Although the Court does not believe this to be outcome determinative, the Court does conclude that the parties agreed to following the JAMS Streamlined Arbitration Rules. Under Rule 20 of the JAMS Streamlined Arbitration Rules, "[p]roceedings to enforce, confirm, modify or vacate an Award will be controlled by and conducted in conformity with the Federal Arbitration Act, 9 U.S.C. sec 1, *et. seq.*, or applicable state law." But because there is no evidence in the record that the parties agreed that California law should govern this action over the FAA, the Court finds that the FAA still applies.

### B.    Timeliness

Next, each party argues that the other party's petition is untimely. Mr. Scott urges that Mr. Sgromo's cross-petition to vacate the award was untimely because it was filed on January 26, 2020, eleven months after service of the final award was delivered on February 25, 2019. *See* Dkt. No. 32 at 5–7. And under § 12 of the FAA, 9 U.S.C. § 12, a party seeking to vacate an arbitration award must do so no later than three months after the arbitration award is delivered. Mr. Sgromo argues, in turn, that his notice of removal, which he executed on June 13, 2019, included a cross-petition to vacate the award and that Mr. Scott failed to timely respond to this petition. *See* Dkt. No. 30 at 2–6; *see also* Dkt. No. 1 at 10–27.

Mr. Sgromo first suggests that the final arbitration award was not delivered until March 4, 2019, and that under Rule 5(e) of the JAMS Streamlined Arbitration, he was entitled to three additional calendar days, making the effective delivery date March 7, 2019. However, the proof of service attached to Mr. Sgromo's own notice of removal indicates that the final arbitration award was mailed on February 25, 2019. *See* Dkt. No. 1-3, Ex. D. Rule 5(e) states that "[s]ervice by [U.S. mail] is considered effective upon the date of deposit of the document." Mr. Sgromo was thus served as of February 28, 2019. Rule 5(e) does state that three calendar days should be added when "computing any period of time prescribed or allowed by these Rules for a Party to do some act within a prescribed period." However, even adding the three calendar days to the FAA's three-

United States District Court
Northern District of California

1    month deadline to file a petition to vacate the arbitration award, and even assuming Mr. Sgromo's

2    notice of removal constituted a petition to vacate the arbitration award, he still filed the notice of

3    removal over two weeks after the deadline in the FAA.

4        **C.    Merits**

5        Even if the Court were to find Mr. Sgromo's petition timely, Mr. Sgromo has failed to

6    carry his burden of showing that the arbitration award should be vacated.  Mr. Sgromo argues that

7    Justice Low exceeded his authority because he "understood and correctly stated the law but

8    proceeded to ignore it."  *See* Dkt. No. 1 at 12.

9        Under the FAA, arbitrators exceed their powers only if an arbitration award constitutes a

10   "manifest disregard for the law" or is "completely irrational."  *See Comedy Club, Inc. v. Improv*

11   *W. Associates*, 553 F.3d 1277, 1288 (9th Cir. 2009); *see also* 9 U.S.C. § 10(a)(4).  The Ninth

12   Circuit has explained that "'[m]anifest disregard of the law' means something more than just an

13   error in the law or a failure on the part of the [arbitrator] to understand or apply the law.  It must

14   be clear from the record that the [arbitrator] (1) recognized the applicable law and then (2) ignored

15   it."  *Michigan Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995) (quotations

16   omitted).  That is, the moving party must demonstrate that the arbitrator "underst[oo]d and

17   correctly state[d] the law, but proceed[ed] to disregard the same."  *Bosack*, 586 F.3d at 1102

18   (quotation omitted) (alterations in original).  An award is completely irrational if it fails to "draw

19   its essence from the agreement."  *Comedy Club*, 553 F.3d at 1288.  This standard is not satisfied

20   where the arbitrator is arguably interpreting the contract and that interpretation is "plausible."

21   *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 643 (9th Cir. 2010).

22       Mr. Sgromo contends that Justice Low misapplied the doctrines of estoppel and res

23   judicata, as well as the statute of frauds.  *See* Dkt. No. 1 at 12–17.  The Court is not persuaded.

24       Mr. Sgromo first suggests that Justice Low erred in declining to apply the doctrine of

25   estoppel to join Eureka as a party to the arbitration and in determining the ownership rights of

26   third parties to the Intellectual Property and any resulting royalties.  *See id.*  However, as Justice

27   Low correctly reasoned, Eureka was not a party to the LTA.  *See* Dkt. No. 1-3, Ex. D.  And he did

28   not determine the ownership rights of third parties, but rather explained that "[t]he arbitration

United States District Court
Northern District of California

10

concerns the LTA and deals with all property, business interest and investments *as between Sgromo and Scott*." *See id.* (emphasis added). Justice Low further concluded that, as already found in the interpleader action, "[t]he royalty, patents and intellectual property do not belong to Sgromo." *See id.* Mr. Sgromo next contends that Justice Low misapplied the doctrine of res judicata. *See* Dkt. No. 1 at 18–19. Although his argument is difficult to understand, Mr. Sgromo appears to suggest that Justice Low somehow misapplied or altered the terms of the settlement agreement between Eureka and Bestway. *Id.* There is simply no evidence in the record, or in Justice Low's reasoned award, to support such a contention. As already noted, Justice Low explicitly stated that the arbitration only concerned Mr. Scott and Mr. Sgromo. *See* Dkt. No. 1-3, Ex. D.

Mr. Sgromo further argues that Justice Low misapplied the statute of frauds. *See* Dkt. No. 1 at 20–22. Justice Low concluded that Mr. Sgromo failed to establish that Mr. Scott had misrepresented any terms of the transfers of the Intellectual Property to Eureka or of the rights to the resulting royalties. *See* Dkt. No. 1-3, Ex. D. It is clear that Mr. Sgromo disagrees with Justice Low's findings, but mere disagreement is not a basis to vacate an arbitration award. And Mr. Sgromo's recitation of case law concerning the statute of frauds does not establish that the arbitration award manifestly disregarded the law or was completely irrational. *See Comedy Club*, 553 F.3d at 1288. Similarly, Mr. Sgromo offers no evidence to support his contention that the award fails to "draw its essence from the agreement" *See* Dkt. No. 1 at 23–27. *Comedy Club*, 553 F.3d at 1288. Mr. Sgromo misconstrues the scope of the arbitration award, which, again, only concerns Mr. Scott and Mr. Sgromo. Mr. Sgromo seeks to reargue the issues decided in the arbitration, which is improper.

Lastly, Mr. Sgromo's reliance on California Code of Civil Procedure § 664.6 is misplaced. *See* Dkt. No. 30 at 6–7; *see also* Dkt. No. 33 at 6–7. Section 664.4 is a state procedural statute that permits state courts to enforce certain kinds of settlement agreements. It does not govern this action. And even if it did, Mr. Sgromo appears to rely on it to enforce the third-party settlement agreement between Eureka and Bestway. Mr. Sgromo is not a party to this settlement agreement, as Judge White recently reiterated in denying Mr. Sgromo's motion to enforce the settlement

1   agreement in a parallel action.  *See Eureka Inventions, LLC v. Bestway (USA), Inc.*, 15-cv-00701-

2   JSW, Dkt. No. 71.

3   **V.     CONCLUSION**

4           Accordingly, the Court **GRANTS** Mr. Scott's motion to confirm the arbitration award and

5   **DENIES** Mr. Sgromo's motion to vacate the award.  The remaining motions are terminated as

6   **MOOT**.  The clerk is directed to enter judgment consistent with this order, in favor of Mr. Scott,

7   and to close the case.  The Court further cautions Mr. Sgromo that he may not evade this Court's

8   findings, or those of any other court, by filing serial actions in other fora.

9           **IT IS SO ORDERED.**

10  Dated:  10/19/2020

11

12  HAYWOOD S. GILLIAM, JR.
    United States District Judge